I'm here to support Leslie Wood for Petitioner Patrick Trent. I'd like to use those three minutes for a bit of Q&A. I'd like to focus my comments today on the content of the United Courts Order comment on the Court's recent decision in Houston, which will be expected soon. Before I get there, I'd like to just note a few things that we agreed on. The counsel here stated 18 months before trial that she was worried about a conflict with the public defender's office who previously represented Xavier Lozano who was a critical witness in the state's case. The prosecutor at that point said that Lozano would not be called. Three days before trial, the prosecutor added Lozano to his witness list and again requested that Lozano testify. The trial court at that time recognized that if Lozano were to testify, it would put counsel in the middle between the obligation to her own client and the obligation to Lozano. And again, counsel stated that. Halfway through trial, the state again requested that Lozano be called and the trial court changed its ruling and allowed Lozano to testify. Well, question one is, did she have a conflict? It seems like probably she didn't at that point. Well, as this Court has held in Alberni and Lewis and as well as in Hovey and Rodriguez, that the nature of the question of whether a conflict exists is based on adverse effect, whether divided loyalties have an adverse effect. But I'm asking first before. I mean, we know that she thought she had a conflict and that she said that this is why she didn't cross-examine him. But I'm trying to step back a minute and say, does it matter to the analysis whether she in fact had any ethical problem in had she decided to go ahead and do the cross-examination? Well, from our perspective, the answer would be no. There is not. I mean, even if counsel believes that there is a hypothetical, I mean, even if it turns out there's a hypothetical conflict, that counsel honestly believes in that conflict and then it adversely affects her representation, that that is a violation of 6. But it's not fair. But it may be. But it may be a Strickland violation. I mean, that's the problem, right? I mean, the real question is what box are we in? I mean, if she was, if she really had no conflict and went ahead and didn't do the cross-examination, even though she should have, that would be a Strickland problem. And as I understand it, you're not raising a Strickland issue. We are not. And let me step back just to explain the nature of the conflict itself because I do think we didn't do this well enough in our briefing, and I apologize for that. The nature of the conflict itself was that the public defender's office had negotiated a deal for Lozano based on a 1997 robbery. Now, that robbery served as the predicate offense in our client's trial for the street terrorism. Moreover, Lozano was testifying under that agreement when he testified against defendant. And so the deal that was negotiated by her office included that he had to testify truthfully. Now, if she were to cross-examine him vigorously as she did against another state's witness, Jimenez, who provided the other aspects of gang evidence against our client, it was 100 pages of blistering cross-examination. She refused to do that here because she believed that that would invoke him, Lozano, to break his plea agreement, and then he would be liable for the robbery that he had fled to as well as other crimes that he had admitted when he had debriefed. So, in fact, here there was an actual conflict. But I would submit that even if it was a hypothetical one. But her office wasn't representing him anymore, was it? No, they weren't. That is absolutely correct. And she had never represented him. It was successive representation, and it was considered imputed representation. And she had no confidential information that was relevant to this. She had no confidential information. But I would say that the courts have found that while having confidential information is one way in which conflict can occur, that there are other ways. And in this instance, it was that she believed that she would force a client or a previous client of her office to go against the plea agreement, and then he would be susceptible to criminal liability. But I would also note that the touchstone for the conflict analysis, as they say, is not about the hypothetical nature of the prior representation. It is about whether there was a divided loyalty that led to an adverse impact. She stated it 18 months, four days before, and then halfway through the trial. So you're arguing for a rule that basically says if the lawyer thinks she has a conflict and acts on that, it doesn't make any difference whether she's totally wrong about that. And that's what's ‑‑ it's an interesting problem, but I don't know what the answer is. Do you have any support for that? Well, I do have support for that. I always say it in Dickens and in Sullivan. But in none of those cases did anybody ever conclude that there really wasn't ‑‑ I mean, there was a lot of debate about whether it was an actual conflict or a potential conflict, but nobody was suggesting that there really wasn't a conflict in any ordinary code of ethics sense. Well, many of those cases were both imputed and successive. So to the extent that that, you know, extenuates the potential for conflict, which of course it does if it were joint representation. Which one was imputed and successive? Imputed and successive, Hovey and also Rodriguez, although that was a direct appeal case, were both. And Houston was. But, of course, Houston, as I mentioned, is a mixed bag because it introduces the idea that prejudice also need to be proven, which it's our intention that it need not be proven. And based on Alberni and Hovey and Rodriguez and Lewis, this court has already resolved that, that the law has an adverse impact based on a divided loyalty that prejudice need not also be proven. And if you think about it from the defendant's perspective, that makes incredible sense. And that's sort of where the conflict analysis and focus comes from. Just because the attorney believes they have an obligation and believes it wholeheartedly and then refuses to cross-examine a critical state's witness, the right to assistance of counsel's conflict decree has, in fact, been violated. And as the court in Mickens noted, it's not an inquiry into the theoretical nature of the conflict itself. It's whether the conflict adversely affected the defendant's representation. And I would point out that Lozano was critical. Lozano, the prosecutor promised not to call Lozano. It was repeated again and again, requested again and again. And then the only other evidence on the damage was submitted by Jimenez. And after the 100-page cross-examination of Jimenez, that's when the prosecutor renewed her request. He said, we need Lozano. How critical was Lozano? I understand he was called solely to corroborate a gang expert with law enforcement. While he was called to do that as well, that was why the prosecutor said that he was called. If you look at the evidence, the defendant here, he admitted being present. He said that he was surprised by the attack and walked away. It was the state's theory that the reason that Mr. Trent was involved and was involved was because it was a hit on a dropout from the Northern Structure Gang. So that provided critical motive for why he would be involved in this type of altercation instead of what he had said. And so, of course, if, in fact, this had been an alibi defense or something, that Lozano's testimony wouldn't have been important in that sense. But because it was directly related to motive and the only reason that our client, Patrick Trent, would be involved in the altercation and the murder. Can you allow me to reserve some time? I do. Thank you very much. Thank you. May it please the Court. I'm Katherine Chapman representing the appellee Ward Davis. In no case cited by Trent has this Court ever granted relief for a system member's violation based on a conflict without requiring the showing of prejudice in a case in which representation causing the conflict is both successive and purely imputed. Counsel have no privilege of confidential information about the prior matter. These two cases are unrelated. And say that it's not a conflict of action for which there may be other reasons. Well, it seems to me there are two possible reasons why this case is different. One is I'm not sure it is unrelated as she has just described. That is, if he was testifying under the deal that was cut by her office and the cross-examination could affect his deal, I'm not sure how unrelated that is. And secondly, what's really odd about this case is that in most of the cases we have a conflict with no effect. Here we have an effect but maybe no conflict. And the question is, does that matter? Well, first I would respond that this Court is required in the way of cases being related in a good deal more direct than that. Cases in which, for example, in Houston there was an altercation between the defendant and the witness that was directly related to the motive in Houston's case. Here what we have is a case in which the public defender had completed its representation of Lozano and obtained his plea agreement for him. And he was at the point where he was still pursuant to that plea agreement cooperating in these cases, but the public defender no longer had any interest in whether Lozano was... For example, since the public defender had negotiated the deal, if he had some question about how far the deal went and how he should operate under the deal, wouldn't he go back to the public defender and discuss that? Not to this public defender. Why not? This public defender had no knowledge of the details of the deal, no confidential knowledge, I should say. I understand that, but I understand that. I mean to the public defender's office, to the person who he had dealt with. In other words, this is an implementation. The imputation is a second problem, but suppose it was the same PD. I mean, it seems to me that she does have a continuing interest that runs through this trial because this trial is implementing the deal that she negotiated. That's not the test this Court has used. The test this Court has used is... I'm sorry? Factually related cases. Factually related cases and privileged information. Now, if privileged information came into play in cross-examining this witness, that would be different, and that might happen if we had the same public defender. But here we don't. We have a public defender who has got the knowledge to say, oh, I know he's not telling the truth and I know he's going to be in trouble on his deal. She doesn't have that knowledge. She represented to the trial court that the attorney who represented Lozano would not even discuss the case with her, and that is probably why throughout her protestations she is languishing. Like, I'm not convinced I don't have a conflict, and she's very tentative in asserting a conflict. It also may be why she never goes as far as moving to withdraw. She herself is not convinced she has a conflict. But she insisted that it was the reason why she didn't do the cross-examination, though. Well, she discussed two things at the trial court. One, that she did not feel comfortable cross-examining him. Now, maybe, you know, she feels like for an ethical reason she shouldn't be cross-examining him. The Sixth Amendment doesn't protect that. I don't understand that. I thought it was exactly what it protects. I mean, the whole line of cases under Kyler and all that has to be premised in respecting attorneys' ethical obligations. Otherwise, we could just tell everybody to go on and ignore their ethical obligations and there wouldn't be any Sixth Amendment problem. Well, Mickens says that the purpose of the Solemn Experiment, which is what we're talking about in the Solemn Court, is not to enforce ethical standards. They say that in Mickens, and I think we have to take them at their word. Whether the attorney has a conflict or not is an objective inquiry. It's not based just on defense counsel's professed concern. Well, if you run that in this case, then it seems to me the petitioner wins because the lawyer said that her behavior was because she believed she had a conflict. I was troubled by that because I thought, well, if she's just wrong about that, then it should be a Strickland problem but not a Kyler problem. But you seem to be saying the opposite. You seem to be saying that if she operated on the premise that she had an ethical conflict, it doesn't matter whether she did or didn't because ethics don't matter. What matters is the actual effect, and that was the actual effect. The effect was that it made her not completely represent her client. Well, if that's the case, if she had an ethical concern that affected her representation, what I'm saying is we are out of the Sullivan rule and we are into the Strickland rule. Why? Because the Sullivan rule does not apply to protect just ethical concerns. It has to be a case in which counsel is actively raising a different conflicting interest, and that's not what we have here. The second thing I would say about that is that the state court explicitly found that her reason for not crossing Daniel Lozano was not an assertive conflict. It was concerns over the discovery issue that they didn't break it. Where is that? That is in the excerpts of record of the Court of Appeal opinion. I didn't hear. What page? 17. 17? Okay. And that is well supported by the record in light of the fact that it crosses Daniel's name, who had also been represented by the public defender's office in his case. And the court found that there was not a public defender's office also who did not cross Daniel's name like she did. Where in the record is the trial court's discussion of why he went ahead and allowed this? In other words, I see what the state supreme state court of appeals said. Is that supported by the record in terms of what the reason was, why she didn't do the cross-examination? Acknowledging that Trent's counsel also maintained that she thought she might have a conflict, she also stated that she was not prepared to cross the name of the witness. And as I said, she did cross the name of Hernandez, who also had been represented by the public defender. No counsel like Trent's counsel did not cross Daniel's name. What she said was, next question, is there going to be a cross-examination of Mr. Lozano, Ms. Hanson? It's my position that I have a conflict. She didn't say I might have a conflict or I could have a conflict. I know the court does not see that there is. Is there going to be a cross-examination of Mr. Lozano? No. So I don't understand how the state supreme court could conclude otherwise, state court of appeals. Well, as the precinct said, the state court can consider in light of what counsel is saying and does not have to take counsel at his or her word as to whether they do or do not have a conflict. And that is what the state of Florida court did in this case, is viewing the whole record, the extensive disclosures about discovery. That is their conclusion. Now, that's it. That's the conclusion of historical facts. Turning to the Houston case, and I see my yellow light is on. I actually have a lot to say about Houston, which is a recent case. Why don't you say it for, say, two minutes. Why don't you say it for two minutes. Let me begin by saying I would be happy to submit supplemental briefings if the court desires, if we can't cover everything. Houston, first of all, the senior school, the attorney in that case went much further in articulating a conflict. He had knowledge of the prior case. The case was directly related to the motive in the instant case. It was directly related as well as counsel. This court found that there was an ad for the state court in this case. The parties in the court discussed the vulnerability of a conflict on several occasions. And counsel had every opportunity to articulate a real conflict. Trent has never sought further hearing. Trent must be satisfied with the hearing that he got in the trial court because he has never asked for further hearing on state habeas. Houston had articulated facts evidently supporting prejudice under Strickland because Houston is actually a Strickland case. Houston recognizes- Isn't that the ultimate point, that the court, although it didn't exactly say this, treated it as a Strickland case? It appears that it did because it reimagined it for a prejudice finding. It was. It was. Now, in this case, Trent has never argued that he has suffered prejudice under Strickland. He's kind of sat throughout all of these proceedings on Sullivan and the Sullivan rule and its exception for not having to show prejudice. So that raises a number of problems, the first one being that a Strickland claim is not exhausted in the state court. It's probably teed barred. And I guess what I would have to say is if this court were to choose to remand in this case, we would ask that it not be remanded specifically for an evidentiary hearing but for Trent to make a showing that he is entitled to an evidentiary hearing since he has never done that, at which point we can thrash out these issues of whether he can make an adequate showing, whether there are exhaustion issues, teed issues, all of these things that have not been addressed so far. Houston is also distinguishable in the application. Okay. Would you wrap up, please, because it's the Reddit server. Okay. Okay. Thank you. Thank you very much. Thank you. I'd just like to start by saying that it was never, counsel was clear 18 months before trial, 14 months before trial, three weeks into trial, that the reason she would not cross-examine was a conflict issue. What can I do with the fact that the State Court of Appeals seemed to say otherwise? The State Court of Appeals was wrong on that point. They actually found that she had not, the co-counsel had decided not to cross-examine on discovery. Now, maybe they got confused between what the co-counsel said about not cross-examining and what she had said, but she had been very clear about that. Co-counsel meaning the counsel for the co-defendant? Yes, I'm sorry, co-counsel. Moreover, they really think, they also said that she had an exploded idea of the nature of her belief in the concept of knock that never showed adverse impact. At no point has the State said that she had a conflict of interest, so her belief that she had a conflict of interest is that there was not. Well, what about the observation that the bottom line in all these cases though was the other one, was otherwise? That the bottom line in all those cases was that there was no constitutional violation. Hovey ultimately concluded that there was in fact no constitutional violation. It did, but it remanded for a hearing on adverse impact. And we believe in that, and that's to her point of why we've never asked for a Strickland hearing or a prejudice hearing. That was used to be. I was trying to get Hovey. I don't remember Hovey remanding on anything. Oh, I'm sorry. I may have been thinking of Alberti. Okay. Thank you very much. Thank you, counsel, for a useful argument and an interesting case. The case of Trent v. Evans is submitted.
judges: Tashima, Berzon, Timlin